Nicholas M. Pette, J.
The court in this habeas corpus proceeding is called upon to decide, who, as between the separated father and mother of a five-year-old female child, should be awarded its permanent custody. In the consideration of that perplexing problem, it seems to be well settled in this State that “ a child’s welfare is the first concern of the court upon a habeas corpus proceeding, where the judge acts ‘ as parens patriae to do what is best for the interest of the child ’.” (People ex rel. Kropp v. Shepsky, 305 N. Y. 465, 468.)
Protracted hearings were conducted before me. Many witnesses were heard.
The original proceeding was heard before Mr. Justice Peter Daly, and on October 29, 1957 he rendered his decision in which he determined: ‘‘ The writ is accordingly sustained solely to the extent of allowing the child to stay with petitioner at her sister’s home in Yonkers each weekend, from Friday at 3 p.ivi. to Sunday at 6 p.m. This disposition is without prejudice to a new application for complete custody subsequent to September 1,1958, upon proof of the conditions affecting the child’s welfare as they then exist.” (N. Y. L. J., Oct. 31,1957, p. 10, cols. 5-6.) The petitioner and respondent wore married on June 3,1951 and their only child, whose custody is sought, was born on September 29, 1953. Prior to her marriage, it appears from the hospital records in evidence: (1) that petitioner was admitted to Bellevue Hospital on September 27, 1949 suffering from a mental illness, and after three days there was transferred for treatment to West Hill Sanitarium, and on October 20, 1949 she was transferred to Oceanside Gardens Sanitarium from which institution she was discharged on February 25, 1950 with the final diagnosis as “schizophrenia-catatonic, recovered, prognosis good”; (2) on March 2, 1955 she was admitted to Mount Sinai Hospital from which she was discharged on March 21, 1955 with a final diagnosis made by a Dr. Bernstein of “ schizophrenia, chronic paranoid type ”; (3) on March 22, 1955 she was readmitted to Oceanside Gardens Sanitarium, suffering from an undetermined type of schizophrenia and was discharged from there on May 14, 1955 with a diagnosis of “schizophrenic attack — type uncertain ”; (4) on March 28, 1957 she was admitted to River Crest *446 Sanitarium with an admission diagnosis of “ Dementia Praecox —catatonic type ”, and was discharged on May 11, 1957 with a diagnosis of “Dementia Praecox — catatonic, improved condition
The evidence discloses that since May 11, 1957 the petitioner has had no episodes and that on January 28,1958 and at monthly intervals thereafter, up to September 18, 1958 she has been under the observation of Dr, J. William Silverberg, a physician, psychiatrist and psychoanalyst.
Dr. John A. Bianehi, a physician and psychiatrist and since 1930 resident psychiatrist at the Brooklyn State Hospital, a diplómate of the American Board of Psychiatry and Neurology, associate professor of psychiatry at both the Downstate Neiv York University Medical School and Fordham University, as well as a fellow of the American Psychiatric Association, had testified at the hearing before Mr. Justice Daly a year before, and he testified at the hearing before me on- behalf of the petitioner.
Dr. Bianehi, who had first examined the petitioner on May 31, 1957 and last examined her on October 13, 1958 and who had read and examined an abstract of the records of Oceanside Hardens Sanitarium which incorporated therein the record of Bellevue Hospital, testified that in schizophrenia, the common name for dementia praecox, there are various types, such as, paranoid, catatonic, hebephrenic, simple and mixed types, and that the catatonic type has the best prognosis, in which patients recover spontaneously many times and many times have no after attacks or episodes. He disagreed with the diagnosis made by Dr. Bernstein at Bellevue Hospital, and testified that upon his examination of the petitioner on October 13,1958: “ I found that she was normal in every respect, that her productions were normal, relevant, coherent. She showed no psychiatric ideation. She was well poised and I feel that this woman at the present time knows the difference between right and wrong, is completely capable of caring for herself and her child. I don’t think there is any danger at this time for this child to be in the same residence and under the protection and care of her mother ’ ’. He testified, on cross-examination, that the petitioner was cured or recovered and that the expressions cured or recovered were just a play of words and meant the same thing. He also stated that “manic-depressive psychosis, manic-type” is a benign type of psychosis from which the patient recovers and that maníes are never assaultive.
Dr. J. William Silverberg, a physician, psychiatrist and psychoanalyst, also testified on behalf of the petitioner, and he *447 stated that she had been under his observation at monthly intervals since January 28, 1958 until September 18, 1958 and that he examined the hospital records. He testified that in his opinion, the petitioner’s “ present condition is essentially that of a normal person, a normal mother, that she presents none of the overt stigmata of the illness from which she has suffered, that I think she is a capable mother ” and that on the basis of his examination and the records of the hospitals, he recommends that the court grant custody of the child to the petitioner.
Dr. Samuel O. Karlman, a physician specializing in neurology and psychiatry testified on behalf of the respondent. He stated that he saw petitioner at his office on March 28, 1957 and had her immediately admitted to Eiver Crest Sanitarium, where she remained until April 10, 1957; that he treated her at that institution, and in his opinion she was suffering from 4 4 catatonic schizophrenia It was his opinion that the petitioner will have episodes of schizophrenia in the future but that at the present time he has no opinion as to whether the petitioner is now a catatonic schizophrenic. On cross-examination he testified that when he last saw the petitioner on April 10, 1957 she was improved. He further testified that persons who have suffered from catatonic schizophrenia have remissions in which they get along fairly well but that a complete recovery generally does not occur; that periods of remission may last from 1 year to 10 years and longer, and that a person who has suffered from catatonic schizophrenia may improve spontaneously. He also testified that if the petitioner is better she is capable of taking-care of the child, but there is no way of knowing when petitioner will have another episode, that frequently they come on without any warning at all but the patient may occasionally act nervously and irritable for a period and thus give warning.
Dr. Knut Houck a physician specializing in neuropsychiatry since 1929, testified on behalf of respondent, that he examined the petitioner four times in 1949 and in his opinion she was then suffering from catatonic schizophrenia; that subsequently, as the physician in charge of Oceanside G-ardens Sanitarium, he first saw petitioner there on March 24, 1955 and once or twice a week thereafter until May 15, 1955 when she left the hospital; then he saw her at his office several times between May 23,1955 up until November 20,1955. That in 1955 petitioner had another episode of catatonic schizophrenia, and in his opinion she will have future episodes, which could happen at any time, sometimes with warning, such as restlessness, insomnia, withdrawal, becoming lax in her household affairs, of being overcritical of others, being suspicious of others. In answer to the court’s *448 inquiry, he stated that it would he highly inadvisable for petitioner to have continued custody of the child. He differed with the opinion of the doctors that it would be a form of therapy, helpful to her condition, to her complete recovery, if she had the child, stating that it AA'ouhl bo too great a responsibility for the petitioner. He also testified that a catatonic schizophrenic attack could recur at any time from a few months to 10 years or even more. He also testified that he has private patients living at home who suffer from catatonic schizophrenia in a mild form.
Dr. Robert M. Robbins, a physician specializing in child psychiatry, testified on behalf of respondent that he first saw the petitioner’s child on May 19, 1958 for the purpose of making a psycho-diagnostic case study, and his diagnosis was “a secondary behavior problem, anxiety, regressive pattern ’ ’. He stated his second diagnosis was “ disorganized, deteriorating personality ” due to a lack of stabilization of the home environment. He testified that in view of the past history of the mental illness of the petitioner that it would be inadvisable to give custody of the child to the petitioner.
The testimony of this physician suggests that the best interests of the child would be served by a stabilization of the home environment, 1‘ which lends itself very readily to the assumption” that if the petitioner is a fit person to have custody of the child permanently, the home environment of the child would be more stabilized than it now is, if petitioner were to have permanent custody of the child.
It is significant that Doctors Bianchi and Silverberg had examined the petitioner shortly prior to their testifying in this proceeding, whereas Dr. Karlman, who last examined her in April, 1957 found her condition improved, and that Dr. Houck had last examined her in 1955. This, considered in the light of Dr. Bianchi’s and Dr. Silverberg’s testimony that the petitioner has fully recovered and is of normal mentality, coupled with the laymen testimony of the other witnesses who testified to the normal activities of the petitioner and the total absence of any episodes since 1957, enables the court to find a substantial basis upon which to justify the decision it makes in this proceeding.
There is no dispute that the physical living conditions in the one-family house in Yonkers are superior to those afforded in the apartment in which the child and her father now live. The court, under the circumstances shown to exist since this matter was heard by Mr. Justice Daly, is inclined to place this child of five years — a daughter — in the custody of her mother, whose love for the child is beyond question.
*449 The evidence adduced before this court establishes that the petitioner is now in complete remission from her psychotic episode, and while the four psychiatrists Avho testified disagreed as to the advisability of awarding custody of the child to its mother, the court Avas impressed by the demeanor of the petitioner in the courtroom and on the witness stand and the expert testimony given by Dr. Bianchi and Dr. Silverberg, that the petitioner has fully recovered and is of normal mentality and fit to have the custody and care of her child. The sustained physical and mental well-being of the petitioner since 1957 manifestly support the conclusions of Dr. Bianchi and Dr. Silverberg. The fact that all of the psychiatrists agree that one Avho has suffered from catatonic schizophrenia and has periods of remission, can have recurring episodes in the indefinite future, which could occur any time from a few months to 10 years or more thereafter, is founded on the assumption that there is no permanent cure or recovery, as Dr. Bianchi puts it. However, as I have already stated, Dr. Bianchi and Dr. Silver-berg have testified that petitioner has fully recovered and is of normal mentality, and that she is a fit person to have custody of the child, and have recommended that the court aAvard such custody to the petitioner.
Under all the circumstances, the court finds that the welfare and interests of the child will best be served if the child’s custody is aAvarded to the petitioner to live with her mother in the one-family house in Yonkers for a trial period of six months from the date of the entry and service of the order to be made herein, in reliance upon the opinion of the aforesaid psychiatrists that no danger to the child could result by awarding custody to this mother.
The writ is accordingly sustained solely to the extent of awarding custody of the child to the petitioner, to live in the one-family house in Yonkers, New York, with the petitioner and the petitioner’s sister and brother-in-law and the latter’s twin daughters, for a trial period of six months from the date of the entry and service of this order, at the end of which period application for complete custody thereafter may be made, upon proof of the conditions affecting the child’s Avelfare as they then exist. The order to be entered hereon shall provide for such visitation rights to the respondent as the parties may agree upon, or in the event of disagreement, the court will determine and fix such visitation rights.